NOT FOR PUBLICATION

| | |
|---|---|
| EDELSON V, L.P.,<br><br>    Plaintiff,<br><br>v.<br><br>ENCORE NETWORKS, INC., WESLEY CLOVER INTERNATIONAL CORPORATION a/k/a WESLEY CLOVER CORPORATION, SIR TERENCE H. MATTHEWS, PETER C. MADSEN, JOHN DOES 1-10 (fictitious), ABC CORPS. 1-10 (fictitious),<br><br>    Defendants. | UNITED STATES DISTRICT COURT<br>DISTRICT OF NEW JERSEY<br><br>Hon. Kevin McNulty<br>Civil Action No.: 11-5802 (KM-JAD)<br><br><br>REPORT AND RECOMMENDATION |

JOSEPH A. DICKSON, U.S.M.J.

This matter has been referred to this Court for a Report and Recommendation upon motion by Wesley Clover International Corporation ("Wesley Clover") and Sir Terence Matthews ("Matthews") (collectively, "Defendants") to dismiss Plaintiff Edelson V, L.P.'s ("Plaintiff") First Amended Complaint for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2). Defendants also joined the motion of Encore Networks, Inc. ("Encore") and Peter C. Madsen ("Madsen") to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b).[1] Pursuant to Federal Rule of Civil Procedure 78, no oral argument was heard. For the reasons set forth below, the undersigned respectfully recommends that the Court grant Defendants' motion to dismiss for lack of personal jurisdiction.

---

[1] On May 7, 2012, the Honorable Claire C. Cecchi, U.S.D.J., the District Judge then assigned to this case, entered an Order administratively terminating Encore and Madsen's motion to dismiss after Wesley Clover and Matthews joined in the motion while simultaneously filing the instant motion. Judge Cecchi reasoned that, as a motion to dismiss for lack of jurisdiction, the instant motion must be decided before the Court could reach Wesley Clover and Matthews' arguments regarding Rule 12(b)(6) and 9(b). This case was reassigned to the Honorable Kevin McNulty, U.S.D.J. on August 1, 2012.

I.    **STATEMENT OF FACTS**[2]

Plaintiff filed this civil action against Encore, Wesley Clover, Matthews and Madsen alleging fraud, negligent misrepresentation, unjust enrichment, and breaches of fiduciary duty. Plaintiff is a venture capital fund. Plaintiff alleges it was unlawfully and fraudulently induced to invest millions of dollars in Encore based on false and materially misleading statements of fact, omission of material facts, and exaggerations and over-inflations of Encore's financial and sales data and its customer base.

Plaintiff is a minority shareholder in Encore. Encore is a Virginia corporation with its principal place of business in Virginia. Encore is a telecommunications company. Wesley Clover is a Canadian corporation with its principle place of business in Canada. Wesley Clover is an investment vehicle and private holding company that holds the majority of ownership of Encore and is one Encore's founders. Matthews is an individual who resides in Canada; he is the founder of Wesley Clover and the majority shareholder. Madsen is an individual who resides in Virginia; at all relevant times, Madsen has been an officer of Encore.

Matthews and Wesley Clover filed the instant motion to dismiss for lack of personal jurisdiction.

II.   **PERSONAL JURISDICTION**

A. LEGAL STANDARD

Once a defendant files a motion to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2), the plaintiff bears the burden to establish sufficient facts to show that jurisdiction exists. *Mellon Bank (East) PSFS, Nat'l Ass'n v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992). While a court must accept the plaintiff's allegations as true and

---

[2] The facts are taken from the Complaint and the parties' respective briefs submitted in connection with the motions at issue.

construe disputed facts in favor of the plaintiff, *Pinker v. Roche Holdings, Ltd.*, 292 F.3d 361, 368 (3d Cir. 2002), the court must still examine any evidence presented with regard to disputed factual allegations. *See, e.g., Eurofins Pharma US Holdings v. BioAlliance Pharma SA*, 623 F.3d 147, 155-56 (3d Cir. 2010) (examining the evidence supporting the plaintiff's allegations); *Patterson v. FBI*, 893 F.2d 595, 603-04 (3d Cir. 1990) ("A Rule 12(b)(2) motion, such as the motion made by the defendants here, is inherently a matter which requires resolution of factual issues outside the pleadings, i.e. whether in personam jurisdiction actually lies. Once the defense has been raised, then the plaintiff must sustain its burden of proof in establishing jurisdictional facts through sworn affidavits or other competent evidence."). The plaintiff "need only establish a prima facie case of personal jurisdiction." *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004). However, a plaintiff may not "rely on the bare pleadings alone" in order to withstand a motion to dismiss for lack of personal jurisdiction; "[o]nce the motion is made, plaintiff must respond with actual proofs, not mere allegations." *Patterson*, 893 F.2d at 604 (internal citations omitted).

A district court typically exercises jurisdiction over a non-resident defendant according to the law of the state where the district court sits. *See* FED. R. CIV. P. 4(e). "A federal court sitting in New Jersey has jurisdiction over parties to the extent provided under New Jersey state law." *Miller Yacht Sales*, 384 F.3d at 96. "New Jersey's long-arm statute provides for jurisdiction coextensive with the due process requirements of the United States Constitution." *Id. (citing* N.J. Ct. R. 4:4-4(c)). Accordingly, a district court may exercise personal jurisdiction over a non-resident defendant if the defendant has "certain minimum contacts with [New Jersey] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.

3

*Henry Heide, Inc. v. WRH Products Co., Inc.*, 766 F.2d 105, 108 (3d Cir. 1985) (*quoting Int'l Shoe Co. v. Washington*, 326 U.S. 316 (1945)).

A district court can assert either specific or general jurisdiction over a non-resident defendant. *See Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 414-415 & n. 9 (1984). A court may exercise general jurisdiction when a defendant has "continuous and systematic contacts" with the forum state. *Helicopteros*, 466 U.S. at 415 n. 9. The defendant's "contacts need not relate to the subject matter of the litigation." *Ameripay, LLC v. Ameripay Payroll, Ltd.*, 334 F. Supp 2d 629, 633 (D.N.J. 2004). However, the plaintiff must show more than mere minimum contacts with the forum state. *Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Ass'n*, 819 F.2d 434, 437 (3d Cir.1987). "[G]eneral jurisdiction requires a 'very high threshold of business activity.'" *Ameripay, LLC*, 334 F. Supp 2d at 633 (quoting *Compagnie des Bauxites de Guinea v. Ins. Co. of N. America*, 651 F.2d 877, 891 (3d Cir. 1981)). Moreover, the facts required to establish general jurisdiction must be extensive and persuasive. *Reliance Steel Prods. Co. v. Watson, Ess, Marshall & Enggas*, 675 F.2d 587, 589 (3d Cir. 1982).

On the other hand, specific jurisdiction arises where the claims arise out of the defendant's forum-related activities. *See Helicopteros*, 466 U.S. at 413-14. In order to establish specific jurisdiction, the relevant inquiry is: (1) whether the defendant purposefully directed its activities at the forum; (2) whether the litigation arises out of or relates to at least one of the contacts; and (3) whether the exercise of jurisdiction otherwise comports with traditional notions of fair play and substantial justice. *O'Connor v. Sandy Lane Hotel Co., Ltd.*, 496 F.3d 312, 317 (3d Cir. 2007). In establishing specific jurisdiction, it is not required that the defendant be physically located in the state while committing the alleged acts. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985). Nor is jurisdiction defeated merely because the bulk of

4

harm occurred outside the forum. *Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 780 (1984). A single act may satisfy minimum contacts if it creates a substantial connection with the forum. *Burger King*, 471 U.S. at 476 n. 18.

Additionally, when an intentional tort is alleged, and a defendant's contacts with the forum state are not sufficient to establish general or specific jurisdiction under the above tests, the plaintiff may establish specific jurisdiction under the "effects test." *Calder v. Jones*, 465 U.S. 783 (1984). Under this test, "a court may exercise personal jurisdiction over a nonresident defendant who acts outside the forum state to cause an effect upon the plaintiff within the forum state." *Carteret Savings Bank FA v. Shushan*, 954 F.2d 141, 148 (3d Cir. 1992). Specifically, under the effects test, the plaintiff must show that:

> (1) the defendant committed an intentional tort;
>
> (2) the plaintiff felt the brunt of the harm in the forum such that the forum can be said to be the focal point of the harm suffered by the plaintiff as a result of the tort; and
>
> (3) the defendant expressly aimed his tortious conduct at the forum such that the forum can be said to be the focal point of the tortious activity.

*Imo Industries, Inc. v. Kiekert AG,* 155 F.3d 254, 265-66 (3d Cir. 1989). This test allows the court to assert jurisdiction over a defendant even though the defendant's contacts with the forum state alone are too small to satisfy the requirements of due process. *Marten v. Godwin*, 499 F.3d 290, 297 (3d Cir.2007).

A primary aspect of the effects test is that a plaintiff must demonstrate that a defendant "expressly aimed its tortious conduct at the forum." *Imo Industries,* 155 F.3d at 265. In order to establish that the defendant "expressly aimed" its conduct at the forum, the plaintiff must show that "the defendant knew that the plaintiff would suffer the brunt of the harm caused by the

5

tortious conduct in the forum, and point to specific activity indicating that the defendant expressly aimed its tortious conduct at the forum." *Id.* at 266.

B. DISCUSSION

Defendants assert that neither general nor specific personal jurisdiction can be satisfied. Plaintiff does not argue that this Court can assert general personal jurisdiction over either Defendant, and indeed this Court finds no evidence of the "continuous and systematic" contacts required to establish general jurisdiction.[3] Accordingly, this Court finds no general jurisdiction over Defendant exists. Therefore, this Court must dismiss this action unless Plaintiff can demonstrate that specific jurisdiction exists as to Defendant.

Plaintiff puts forth two theories upon which this Court can exercise personal jurisdiction over Defendants: (1) minimum contacts based on an "agency" theory of jurisdiction and (2) the "effects" test. This Court will address each argument in turn.

1. Minimum Contacts based on Agency

Plaintiff argues that Encore and Madsen are agents of Wesley Clover and Matthews, and since the Court has jurisdiction over Encore and Madsen, the Court likewise has jurisdiction over Wesley Clover and Matthews based on agency. "To determine if a subsidiary is acting as an agent of the parent, courts consider: (1) whether the subsidiary is doing business in the forum that would otherwise be performed by the parent; (2) whether there is common ownership of the parent and subsidiary; (3) whether there is financial dependency; and (4) whether the parent interferes with the subsidiary's personnel, disregards the corporate formalities, and/or controls

---

[3] The Court notes that Plaintiff stated it is not arguing for the assertion of general jurisdiction over Matthews or Wesley Clover because "[a]t present, [P]laintiff lacks sufficient knowledge of the relevant facts regarding the maintenance of continuous and systematic contacts with New Jersey." Br. in Opp. at 13. Plaintiff goes on to state, in a footnote, that if jurisdictional discovery is permitted, it is possible Wesley Clover *may* be subject to general jurisdiction based on "its operation of a commercially interactive website." *Id.* at fn. 2. Plaintiff's request for jurisdictional discovery is addressed in Section III of this Report and Recommendation.

the subsidiary's marketing and operational policies." *Dewey v. Volkswagen AG*, 558 F. Supp. 2d 505, 513 (D.N.J. 2008) (internal citations omitted).

Plaintiff asserts that Encore and Madsen are agents of "Matthews Group,"[4] including Matthews and Wesley Clover, based on the following. First, Plaintiff argues that there is "effectively common ownership between the parent and subsidiary, as Matthews is the 'controlling shareholder' of Wesley Clover, and Wesley Clover is, in turn the majority owner of Encore." Br. in Opp. at 16. Plaintiff also alleges that Encore is financially dependent upon Wesley Clover, which funded Encore's refocused business strategy, and Matthews, who allegedly guaranteed the funds due BreconRidge from Encore; Plaintiff's assertion with regards to Matthews "guaranteed funding" is based on a handwritten note from Mark Rafferty ("Rafferty"), Chief Financial Officer of Encore, to Nick Puro, a colleague of Harry Edelson ("Edelson"). Plaintiff also asserts that Matthews controls Encore's personnel, based on the fact that he provided Madsen with stock options to induce him to serve as Encore's Chief Executive Officer, and that Matthews controls Encore's operational policies, based on the fact that other members of the "Matthews Group," namely BreconRidge and Mitel, are involved in the distribution chain. Finally, Plaintiff notes that Madsen and Rafferty have been "executives and 'key players' of companies owned and/or controlled by the Matthews Group." *Id.* at 17.

The Court understands the significant contacts by Encore and Madsen on the one hand, and Plaintiff on the other; it is clear this Court may exercise jurisdiction over *those* Defendants.

---

[4] Plaintiff uses the term "Matthews Group" to refer to several entities apparently owned, or led, by Matthews; the Court notes that Plaintiff does not indicate which entities, exactly, comprise the "Matthews Group." Plaintiff does state that "[t]he overlapping ownership, management, business activities of the many Matthews entities is so extensive that they refer to themselves in the aggregate, together with Matthews personally, as 'the Matthews Group.'" Br. in Opp. at 1-2. In support of that statement, Plaintiff points to the Declaration of Jeffrey W. Lorell (the "Lorell Declaration"), Exhibit A, p. 84, which is apparently a page from the annual report filed with the United States Security and Exchange Commission by Mitel Networks Corporation, a company that was co-founded by Matthews. However, while the page relied on by Plaintiffs does in fact refer to the "Matthews Group," it does not identify which specific entities are considered part of the "Matthews Group."

However, the Court does not find Plaintiff has sufficiently shown that Encore and Madsen are the agents of Wesley Clover or Matthews such that the Court may exercise jurisdiction over them. Plaintiff asserts that Encore and Madsen are agents of "Matthews Group," including Matthews and Wesley Clover, and then seemingly tries to use Encore and Madsen's "strong jurisdictional contacts with New Jersey" to buttress that assertion. The problem for Plaintiff is that in order for this Court to make the same conclusory leaps, it must rely on tangential connections and/or attribute the actions of one party on to another. The Court is unwilling to do so.

The Court does not find Plaintiff has sufficiently alleged that Matthews controls the personnel or operational policies of Encore; simply because stock option was offered as an inducement, and/or other subsidiaries are involved in the distribution chain, are insufficient grounds on which this Court can find control.

All of these actions are also the result of legitimate corporate activities and organization. To find that they create agency for purposes of *in personam* jurisdiction would eviscerate the jurisprudence on corporate liability. Likewise, the Court does not find the fact that there has been overlap of officers among *subsidiaries*, and not from parent to subsidiary, to be controlling. Moreover, Plaintiff has failed to show that Encore or Madsen are doing business in the forum that would otherwise be done by Wesley Clover or Matthews, or that corporate formalities have been disregarded.

Based on the foregoing, this Court finds that Plaintiff has not established there is an agency relationship such that the contacts of the "agents" may be imputed to Wesley Clover and Matthews, and, accordingly, this Court cannot exercise jurisdiction over Defendants.

2. Effects Test

As discussed above, when an intentional tort is alleged and Defendants' contacts with the forum state are insufficient to establish general or specific jurisdiction, the Court may still exercise jurisdiction if Plaintiff can satisfy the effects test. Under the *Calder* effects test, if the plaintiff is unable to establish that the defendant "expressly aimed" its conduct at New Jersey, the Court will not have specific jurisdiction and, therefore, the Court need not consider the other elements. *See Imo Indus.*, 155 F.3d at 266. Accordingly, if a plaintiff is unable to demonstrate that the defendant "'manifest[ed] behavior intentionally targeted at and focused' on the forum," the plaintiff will fail to establish jurisdiction under the effects test. *Id.* at 265 (quoting *ESAB Group, Inc. v. Centricut, Inc.*, 126 F.3d 617, 625 (4th Cir. 1997)).

Plaintiff's arguments with regard to the effects test are directed solely at Matthews' conduct, and in fact Plaintiff does not mention Wesley Clover at all.[5] Accordingly, this Court will only examine whether it can exercise personal jurisdiction over Matthews, and not Wesley Clover, based on the effects test. Upon review of the allegations in the First Amended Complaint and Plaintiff's brief, the Court does not find that Matthews expressly aimed its alleged conduct at New Jersey.

Plaintiff argues that Matthews has expressly aimed his tortious conduct, i.e. making fraudulent representations regarding Encore either by material misrepresentations or omissions, at New Jersey. However, Plaintiff's argument is premised upon attenuated connections and circumscribed conclusions, and Plaintiff offers little, if any, evidence to support its position. Plaintiff argues that because "[D]efendants expressly directed their fraudulent statements at [P]laintiff, who [D]efendants knew to be located in New Jersey," their conduct was expressly

---

[5] The Court notes that Plaintiff does refer to "defendants" generally when initially asserting the effects test is satisfied; however, when discussing the specific conduct which Plaintiff believes satisfies the effects test, only Matthews' conduct is referenced.

9

aimed at New Jersey. Br. in Opp. at 22. Specifically, Plaintiff points to the alleged material misrepresentations and omissions made by Matthews during conversations with Edelson while the latter was located in New Jersey. Plaintiff also argues that "[w]here, as here, a plaintiff alleges that a defendant acted with the purpose of communicating false and misleading information... and that a defendant withheld material facts... the 'effects test' is satisfied." Br. in Opp. at 23.

This Court disagrees. First, beyond the conclusory statement that Matthews' activity was necessarily directed at New Jersey because it was directed at Plaintiff and that is where Plaintiff is located, Plaintiff has not provided any evidence showing that Matthews did in fact expressly direct his conduct at the forum. A review of the Declaration of Harry Edelson (the "Edelson Declaration"), offered in support of Plaintiff's Opposition, demonstrates that Plaintiff has not shown that the third prong of the effects test is satisfied. First, it appears that Plaintiff is attempting to impute the conduct of others, in which the individual does expressly direct his conduct to the forum, onto Matthews. For example, the Edelson Declaration points to the following: a letter from Matthews *to Madsen*, which was provided to Edelson *by Encore*; a representation to Edelson *from representatives of Bristol Investment Group, Inc.* that they were speaking on behalf of Matthews; an email *from Madsen* to Edelson and others regarding Matthews commitment to Encore. Edelson Dec., ¶¶ 8-9. While it may be clear from these examples that *other* individuals did, in fact, direct their conduct at the forum, the Court cannot use the actions of these individuals, even if they may have personal or professional relationships with Matthews, to find that *Matthews* expressly directed *his* conduct at the forum, and therefore assert personal jurisdiction over him. Perhaps tellingly, the Edelson Declaration is largely devoid of allegations regarding conduct by Matthews directed at Plaintiff or Edelson; there are

no assertions, for example, that Matthews sought Plaintiff out as an investor, solicited business from Plaintiff, distributed investment literature to Plaintiff in New Jersey, travelled to New Jersey to meet with Plaintiff, etc. In fact, the only reference to Matthews' own, personal conduct that was aimed at Plaintiff pertains to conversations Matthews had with Edelson.[6] Edelson and Matthews allegedly spoke on several occasions while Edelson was in New Jersey.[7] Edelson concedes that he initiated telephone calls to Matthews, and/or that Matthews sometimes called him in response to a message *from* Edelson; however, Edelson also asserts that "[s]ometimes Matthews would initiate the telephone call or send [him] an email." Edelson Dec., ¶ 14. Beyond this bare-boned assertion, devoid of any details as to the frequency, content, or purpose for the call(s), the Court has not been provided with any evidence of any conduct wherein Matthews expressly directed his actions to the forum. The Court does not find this one, lone allegation of conduct directed into the forum to be sufficient to find the third prong is satisfied.

Accordingly, based on the foregoing, the Court finds that Plaintiff has not demonstrated that Matthews "expressly aimed" his conduct at New Jersey or that Matthews "manifested behavior intentionally targeted at and focused on the forum." *See Imo Indus.*, 155 F.3d at 265-66.

More importantly, the Court notes that if it were to accept Plaintiff's position, then personal jurisdiction could be found, based on the effects test, any time that plaintiff alleges that a putative defendant purposefully communicated false and misleading information and withheld

---

[6] The Court notes the Edelson Declaration also references a planned meeting between Matthews and Nick Puro, Edelson's partner and colleague; however, since the meeting was *cancelled*, and apparently never came to fruition, the fact that a meeting was scheduled does not satisfy the *Calder* effects test. Indeed, the cancellation of the meeting, for which no details are supplied as to who cancelled the meeting and why, may weigh against Plaintiff's argument.

[7] To the extent Plaintiff has emphasized that Edelson was in New Jersey when he had conversations with Matthews, the Court notes that Edelson's location is only relevant if Matthews purposefully sought him out, and not the other way around; the unilateral acts of the Plaintiff are insufficient to confer jurisdiction over Matthews. The ambiguity of any purported answer to this issue gleaned from the record does not support the exercise of jurisdiction over Matthews.

material facts, or, in other words, so long as the plaintiff sufficiently pleads fraud. Such a proposition, without more facts regarding "expressly aiming" such fraud into the target jurisdiction, does not comport with the principles of due process that underpin a personal jurisdiction analysis.

Based on the foregoing, this Court finds that Plaintiff has failed to satisfy the third prong of the effects test. Accordingly, the effects test cannot provide the grounds for this Court's exercise of jurisdiction over Matthews.

### III.   JURISDICTIONAL DISCOVERY

Where "a plaintiff presents factual allegations that suggest 'with reasonable particularity' the possible existence of the requisite 'contacts between [the party] and the forum state,' the plaintiff's right to conduct jurisdictional discovery should be sustained." *Toys "R" Us*, 318 F.3d at 456 (citing *Mellon Bank,* 960 F.2d at 1223); *see Ajax Enters. V. Szymoniak Law Firm, P.A.*, No. 05-5903, 2008 WL 1733095, at *3 (D.N.J. Apr. 10, 2008). Jurisdictional discovery will not be allowed if the claim of jurisdiction is "clearly frivolous." *Toys "R" Us,* 318 F.3d at 456. To show that the claim is not 'clearly frivolous,' the plaintiff must "present[ ] factual allegations that suggest with reasonable particularity the possible existence of the requisite contacts between [the party] and the forum state." *Id.* (Internal quotations omitted). A request for jurisdictional discovery should be denied if it is to serve merely as "a fishing expedition based only upon bare allegations." *Eurofins Pharma U.S. Holdings v. BioAlliance Pharma SA,* 623 F.3d 147, 157 (3d Cir. 2010). This is not to say that a request for information is *always* "impermissible because it constitutes, to use the time-worn phrase, a 'fishing expedition.' But, without some reason to conclude the pond might be stocked, one cannot demand to 'fish.'" Sirazi v. Panda Express, Inc., No. 08-2345, 2009 WL 4232693, at *3 (N.D. Ill. Nov. 24, 2009).

As stated above, Plaintiff has provided imsufficient evidence that Defendants have the requisite contacts with New Jersey sufficient for either specific or general jurisdiction. Additionally, in requesting jurisdictional discovery, Plaintiff merely states that should the Court find Plaintiff failed to make the requisite showing to establish personal jurisdiction, Plaintiff "respectfully request[s] the Court deny the motion without prejudice and enter a schedule [to] conduct jurisdictional discovery." Br. in Opp. at 26. However, Plaintiff has not demonstrated how, or why, jurisdictional discovery would be beneficial or suggested what it would expect to discover; in sum, Plaintiff has not provided this Court with anything to suggest that if jurisdictional discovery is granted Plaintiff could then meet its burden. Accordingly, the Court must assume that any discovery would, in fact, consist of a fishing expedition since Plaintiff has given this Court no "reason to conclude the pond might be stocked." Id.

For these reasons, the Court respectfully recommends that the District Court deny Plaintiff's request for jurisdictional discovery. On the other hand, while this Court firmly believes that Plaintiff has not met the standards for jurisdictional discovery, it is not so confident that discovery may not ultimately disclose pertinent facts (either way) about Matthews' involvement, or lack thereof, in Plaintiff's investment. Accordingly, Defendants' motion should be granted, but the First Amended Complaint against Wesley Clover and Matthews should be dismissed without prejudice. The parties should not mistake the Court's thoughts about this issue as an open invitation for a limitless exploration of irrelevant and unduly burdensome questions.

IV.   **DISMISSAL PURSUANT TO RULES 12(b)(6) and (9)(b)**

To the extent Defendants joined in Encore and Madsen's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) and 9(b), since this Court finds it lacks personal jurisdiction over these Defendants, it need not, and in fact, may not, reach those issues.

V.   **CONCLUSION**

For the foregoing reasons, the undersigned respectfully recommends that the District Court grant Defendants' motion to dismiss for lack of personal jurisdiction and that he First Amended Complaint should be dismissed without prejudice.

                                                   Hon. Joseph A. Dickson, U.S.M.J.

Dated: August  *13* , 2012

cc:   Hon. Kevin McNulty, U.S.D.J.